ESTATE OF EVANS: EVANS (FRED M.) and another, Appellants, v. EVANS (THOMAS) and others, Respondents.

*June 3—June 25, 1965.*

For the appellants there was a brief by *Krembs & Ambelang* of Sparta, and oral argument by *Charles D. Ambelang*.

For the respondents there was a brief by *Steele, Smyth, Klos & Flynn,* and oral argument by *Frederick Schneider,* all of La Crosse.

WILKIE, J. One question is presented on this appeal. It is whether the trial court erred in authorizing the conservator to place the treasury notes owned by Evans in joint tenancy with others. This is purely a question of law.

In essence, the answer to this question turns on whether the law governing guardianships also controls conservatorships. In effect, the trial court ruled that it does, at least insofar as the authority of a conservator to create a joint tenancy in certain assets of the conservatee is concerned.

In 1955 the legislature adopted the concept of "conservatorship" [1] providing for the appointment of a conservator on the voluntary application to the county court of "[a]ny adult resident who believes that he is unable properly to manage his property or income . . . ." [2] Once appointed, a conservator has "all the powers and duties of a guardian of the estate of an incompetent person." [3]

Sec. 319.19, Stats., which lists the powers and duties of a guardian, contains no express provision which permits a guardian to make a gift, either outright or in joint tenancy, on behalf of the ward as was done in the present case. The primary function of the guardian is to preserve the ward's estate and assets are to be expended or disposed of only to

[1] Ch. 416, Laws of 1955.
[2] Sec. 319.31 (1), Stats.
[3] Sec. 319.31 (3), Stats.

meet the fundamental needs of the ward or his dependents. In at least two Wisconsin cases this court has ruled that a guardian, with county court approval, could liquidate assets of a ward that were already in joint tenancy provided the ward's needs required it and the guardian was acting in the best interests of the ward.[4] Therefore, the trial court was correct in concluding that a guardian, even with court approval, could not create a joint tenancy in certain assets of the ward when such transfer was not for the care, maintenance, or education of the ward.

It does not follow, however, that the action taken here by the conservator (with court approval) in creating a joint tenancy in certain government bonds of the conservatee was a nullity. The basic purpose of the conservatorship statute was "to eliminate the stigma of incompetency for persons who are forgetful because of age, and yet afford them the protection of the court if they desired it."[5] The conservatee is not adjudged incompetent; indeed, in the instant case there was no assertion that Evan Evans was incompetent as part of the proceeding for establishing his conservatorship, and no record was made on his competency. The statute states, "Appointment of a conservator shall not be evidence of the competency or incompetency of the person whose estate is being administered."[6]

Thus, a conservatee is not considered completely incapable of looking after his own property. A ward under guardianship is either a minor, incompetent, or a spendthrift.[7] He is incapable of looking after his own property and it fits the statutory scheme for control of guardianships that the ward should not be able to control what should be done with his

[4] *Boehmer v. Boehmer* (1953), 264 Wis. 15, 58 N. W. (2d) 411; *Will of Barnes* (1958), 4 Wis. (2d) 22, 89 N. W. (2d) 807.

[5] Kroncke, A Decade of Probate Law, 1961 Wisconsin Law Review, 82, 118.

[6] Sec. 319.31 (6), Stats.

[7] Sec. 319.01, Stats.

property. But in a conservatorship, where there is no adjudication that the applicant is incompetent, it makes sense to allow the conservatee the freedom to direct a gift of his property where both the conservator and the court, as here, entered no objection.

Respondents contend that Evans could have accomplished the transfer of property by terminating the conservatorship,[8] then making the transfer, and finally re-establishing the conservatorship. This certainly would be a lot of extra work and waste motion to achieve basically what Evans desired here. Respondents also contend that if Evans did not want to end the conservatorship he could have executed a will leaving the notes outright to his niece and nephew.[9] But if Evans was not incompetent, it would not be reasonable to prevent him from making the transfer *inter vivos*, not testamentary.

It is our conclusion that sec. 319.31 (3), Stats., does not prevent the conservator with its and the court's approval from making a transfer such as the creation of the joint tenancies sought by the conservatee, Evans, in the instant case. The restricted construction of sec. 319.31 (3) proposed by the respondents and adopted by the trial court would defy the very purpose of the conservatorship statute. A statute should not be construed so as to work absurd or unreasonable results.[10]

*By the Court.*—Order reversed, and cause remanded for further proceedings not inconsistent with this opinion.

BEILFUSS, J., took no part.

[8] See secs. 319.31 (4) and (5), Stats.
[9] *Estate of Zink* (1962), 15 Wis. (2d) 527, 113 N. W. (2d) 420.
[10] *Isaksen v. Chesapeake Instrument Corp.* (1963), 19 Wis. (2d) 282, 120 N. W. (2d) 151; *Worachek v. Stephenson Town School Dist.* (1955), 270 Wis. 116, 70 N. W. (2d) 657.