NORMAN M. CLAPP, Secretary, Department of Transportation
You have requested my opinion on the following questions:
"1. Can advance or hardship purchases be undertaken under any circumstances for highway improvement projects where an Environmental Impact Statement and/or a `4F' Statement have not been completed and properly filed and accepted?
"2. Can advance or hardship purchases be undertaken under any circumstances for highway improvement projects where a complete relocation plan has not been filed and approved by the Wisconsin Department of Local Affairs and Development?"
Before discussing your questions, it is necessary to ask and answer the question of whether it is proper for the Highway *Page 201 
Commission to acquire property years in advance of anticipated construction.
As you so clearly state in your letter, highways are not conceived and constructed over night. These major state actions involve the expenditure of millions upon millions of dollars of public monies and must be given a great deal of deliberation. These deliberations and planning take years. It is my understanding that an official highway plan was adopted in 1966 and projects the state highway system up to the year 1990.
In the early stages of planning a particular highway, a corridor is selected which may rather extensively exceed in width the final highway. For example, in some instances, such corridors are a mile wide at specific points. Because of the extended period of time necessarily involved between the selection of the corridor and the full scale program of right of way acquisition, property owners within this initial corridor may face years of uncertainty as to whether their lands will be required for the highway either in whole or in part, or at all. This uncertainty causes the property owner difficulty in developing or improving his property and may even affect its marketability. Accordingly, property owners whose lands lie within a proposed or selected highway corridor may face years of uncertainty and possible economic hardship.
The Highway Commission finds itself in an incredible dilemma. Having the legal responsibility of providing a state highway system and being entrusted with the expenditure of great sums of public funds, the Commission cannot act arbitrarily or capriciously in locating state highways, but must act with the most deliberate care. At the same time, the state legislature has adopted the policy that our citizens have the right to be fully informed as to state action. This wide dissemination of information certainly affects marketability and contributes to the possible economic hardship of corridor property owners. Further, Congress in many of its conditions for federal aid has required that the public be kept fully informed on these projects. Thus, years in advance of actual construction, the property owner within the highway corridor finds himself in the state of limbo or confusion and possible economic hardship. *Page 202 
Before considering this matter further, it is important to consider the nature of this damage to the property owner. The State or Commission has not actually taken anything from the property owner, yet it may be that the property owner finds, so to speak, a cloud over his property brought about by the full, complete and public disclosure of the proposed state action. As mentioned previously, in most cases, if not in all cases, the initial highway corridor covers a greater area than will be needed or used in the actual construction. Accordingly, this cloud over any particular property owner within the corridor, is speculative.
The determination to locate a highway within a particular corridor is a legislative function, which function was delegated to the Commission by state law. Aschwaubenon v. State HighwayComm. (1961), 17 Wis.2d 120, 115 N.W.2d 498. In determining whether to build a particular highway and where to locate that highway, the Commission is not exercising the power of eminent domain, nor would it appear to be exercising the police power of the State. In my opinion, the exercise of legislative power does not constitute a taking under the law, even though damage may result to particular members of the public by such decision.[1]
On balance, the interest of the general public far outweighs the damage to persons located within said corridor.
There is, of course, nothing unique about this situation for it certainly would be unusual legislation or legislative action that would not result in affecting a particular class of the general public.
The Commission's legislative finding that a particular highway ought to be constructed sometime in the future and that it ought to be located within a defined or definable corridor, does not place any legal restriction on the sale or development of the property within that corridor. Yet such action may unavoidably restrict the marketability or development of the lands located within the *Page 203 
corridor. On the other hand, property owners within this corridor may find themselves immeasurably benefited from the proposed action. In any event, any property owner whose lands are eventually taken, will, through due process of law, ultimately receive just compensation.
It is not in the best interests of the State to have property owners within the corridor improve their lands, although they are legally free to do so. Under the obvious practical difficulties involved in planning for and eventually constructing the highway, the question arises as to what limits have been placed on the commission in the acquisition of the needed right-of-way.
Public funds are a public trust and certainly the law does not favor uneconomic use of public funds or of natural resources. The law should favor frugal use of both public funds and natural resources. It profits no one to allow development to proceed with knowledge that such development will be subject to the public bulldozer long before its economic or physical life has been fully utilized.
In construing statutes, absurd results are to be avoided, if at all possible. In re Estate of Evans (1965), 28 Wis.2d 97,135 N.W.2d 832. The grossest absurdity is waste.
In this regard, we are primarily concerned with the interpretation of sec. 84.09 (1), Stats., the pertinent provisions of which read:
"The highway commission may acquire by gift, devise, purchase or condemnation any lands for establishing, laying out, widening, enlarging, extending, constructing, reconstructing, improving and maintaining highways, streets, roadside parks and weighing stations which it is empowered to improve or maintain, or interests in lands in and about and along and leading to any or all of the same; and after establishment, layout and completion of such improvements, the highway commission may convey as hereinafter provided such lands thus acquired and not necessary for such improvements, with reservations concerning the future use and occupation of such lands so as to protect such public works and improvements and their environs and to preserve the view, appearance, light, air and usefulness of such public works. Whenever the highway commission deems it necessary to acquire any such lands or interests therein for *Page 204 
any of such purposes, it shall so order and in such order or on a map or plat show the old and new locations and the lands and interests required, and shall file a copy of the order and map with the county clerk and county highway committee of each county in which such lands or interests are required. * * *"
This section does not describe any time limitation on acquisitions. However, certain prerequisites are required, namely, that the Commission deems the acquisition necessary, i.e., a finding of necessity, an order for such acquisition, which order or accompanying plat must show the location and the lands or interests required and finally, that such order and plat or map shall be filed as provided in the statute.
Although I am not completely familiar with the practices of the Commission, it is my belief that in the case of isolated hardship acquisitions, the procedures concerning the order and plat may not be followed by the Commission. This is not to say that an order and plat could not be devised and filed that would completely satisfy the law.
It is my opinion that sec. 84.09 (1), does not place any restriction on the Commission as to when acquisitions may be commenced. Implied restrictions, as to when the Commission may commence acquiring right-of-way, are unwarranted and such restrictions would result in the extravagant use of public and private funds and natural resources.
The opinion that the Commission may acquire necessary right-of-way years in advance of anticipated construction is further supported by the Commission's practical administrative interpretation of sec. 84.09, Stats., which interpretation is entitled to great weight. Milwaukee County v. Schmidt (1971),52 Wis.2d 58, 187 N.W.2d 777. However, even in the case of the "hardship" acquisitions, the procedures of sec. 84.09 (1), Stats., must be followed and that in the situation of a hardship acquisition, the Commission must be satisfied to a reasonable certainty that the particular lands being acquired within the corridor are, in fact, necessary for the public improvement. Further, that an order and possibly plat must be filed by the Commission that will satisfy the requirements of sec. 84.09 (1), Stats. I realize that the filing of an order and possibly a plat may compound the problem we are *Page 205 
discussing. However, it is my hope that with the services of this office, such instrument or instruments may be developed that will fully satisfy the law, and yet not unduly add to the existing problem.
You question whether it is proper for the Commission to acquire right-of-way prior to the filing and approval of an Environmental Impact Statement and/or a 4F Statement. In this respect, I assume that you are referring to the Federal requirements pertaining to an environmental impact statement.
This question and answer is, of course, restricted to hardship acquisitions and does not encompass the situation of when design approval has been given, in the situation of a federal-aid project, and the State is actively engaged in a full scale program of right-of-way acquisition. What we are concerned with is the rather isolated instance of where the property owner seeks out the Commission with an offer to sell his property and the Commission is convinced or reasonably certain that a hardship situation, in fact, exists.
The National Environmental Protection Act contains the following language:
". . . include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official . . ." (Sec. 102 (c))
In the case of the Federal Act, it is difficult to anticipate a situation where Federal funds would be used for hardship acquisitions. Such acquisitions are made, it is my understanding, prior to Federal design approval and would be undertaken only with State funds. As Federal funds would not be involved, the Federal Act obviously would not be involved. The Federal Act does not directly control State action and certainly does not control the expenditure of State monies.
Section 1.11 (2) (c), Stats., provides, in part:
"Include in every recommendation or report on proposals for legislation and other major actions significantly affecting the quality of the human environment, a detailed statement, substantially following the guidelines issued by the United States *Page 206 
council on environmental quality under P.L. 91-190, 42 U.S.C. § 4331, by the responsible official * * *."
The State Act, on the other hand, does, of course, control State action. However, the State Act is limited to "major actions significantly affecting the quality of the human environment, . . ." In my opinion, isolated changes in ownership from the private sector to public ownership does not constitute major actions affecting the quality of human environment.
Therefore, in answer to your first question, the National Environmental Protection Act does not in any way preclude the State from conducting hardship acquisitions.
Further, the State Environmental Protection Act does not, in my opinion, preclude such limited acquisitions.
Secondly, you question whether it is proper for the Commission to acquire right-of-way prior to the filing of a relocation assistance plan by the Commission and the approval of that plan by the Department of Local Affairs and Development.
Section 32.25 (1), Stats., provides, in part:
". . . no condemnor shall proceed with any property acquisitionactivities on any project which may involve acquisition of property and displacement of persons, business concerns or farm operations until the condemnor has filed in writing a relocation payment plan and relocation assistance service plan and had had both such plans approved in writing by the department of local affairs and development." (Emphasis added.)
It is evident from reading the entire section that this law was drafted to fit the situation of a mass acquisition program and did not contemplate isolated hardship acquisitions over a period of years. Section 32.25, Stats., was enacted to alleviate many of the hardships resulting from public acquisition programs. This law constitutes what is generally referred to as remedial legislation. It is well accepted in this State that remedial statutes are to be liberally construed to suppress the evil and advance the remedy they were intended to effectuate. Stone v.Inter-State Exchange (1930), 200 Wis. 585, 229 N.W. 26. It would certainly be ironical if this remedial statute were to be applied so as to prevent hardship *Page 207 
acquisitions and eliminate the public and private benefits derived from such acquisitions.
The statute involved is extremely ambiguous and there is, in my opinion, question as to whether it is even applicable to the situation we are discussing. For example, it appears in the eminent domain chapter of the statutes and constantly employs the term condemnor. Yet, in the situation of hardship acquisitions, condemnation is certainly not contemplated. However, other language in the section is extremely broad and being a remedial statute, it must be liberally construed. The question of whether this statute is applicable to hardship acquisitions would best be answered by judicial determination.
I recently issued an opinion on this same general subject matter to Mr. Charles M. Hill, Sr., Secretary of the Department of Local Affairs and Development. A copy of this opinion, which is dated August 3, 1973, is enclosed. The August 3, 1973, opinion noted in part:
". . . Section 32.25 (1), Stats., is a prohibition against acquisition of property by a condemnor prior to filing and having approved a relocation payment and assistance service plan where the project will result in displacement of persons."
In the instant situation of hardship acquisitions, it is clear that the Commission has a project which involves or will involve property acquisition and which may involve displacement of persons and business concerns. Under such circumstances, sec.32.25 (1), Stats., in my opinion, precludes even hardship acquisitions by the Commission prior to the filing and approval of the plan called for by this statute.
The opinion to Mr. Hill was mainly concerned with the question of eligibility for relocation assistance payments. The filing of a plan under sec. 32.25, Stats., is not in any way determinative of the question of eligibility for relocation assistance benefits. The August 3, 1973, opinion should be considered when questions concerning individual eligibility for relocation payments arise. For example, in that opinion, it was specifically noted:
". . . On the other hand, where a person is displaced because of an intervening personal reason rather than as the result of a public *Page 208 
project, it is doubtful that the expenditure of public money as provided in amended ch. 409, Laws of 1969, would be for a public purpose. . . ."
The above language may have particular significance to certain hardship acquisitions.
I realize that this answer places a considerable burden on both the Commission and the Department of Local Affairs and Development, for at this early stage of the project, the exact location of the highway itself is not even fixed and the extent of displacement is purely speculative. However, this difficulty should not be allowed to frustrate the benefits that can be derived from hardship acquisitions.
I assume that the Highway Commission could prepare and submit a plan that is relevant and sufficiently detailed to fit the situation of hardship acquisitions and that the Department of Local Affairs and Development will recognize the situation for what it is and approve such a plan. It would be extremely unfortunate if the public, as well as private benefits derived from hardship acquisitions, are frustrated or denied by imposition of unreasonable requirements.
Therefore, in conclusion, the answer to your second question is that a plan should be filed by the Commission and approved by the Department prior to any property acquisition, but that such plan should be relevant to the existing circumstances.
RWW:CAB
[1] The Hon. John A. Decker, Circuit Judge, Milwaukee County, in a rather lengthy memorandum decision in Howell Plaza, Inc. v.State Highway Commission, denied the Commission's motion to dismiss the petition of Howell Plaza. The petitioner is a property owner located within a selected highway corridor and seeks inverse condemnation of its property after the Commission refused to purchase. While this decision casts some doubt on the above statement, it certainly adds considerable credence to the opinion that the Commission may properly engage in "hardship" acquisitions. This case is on appeal to the State Supreme Court.