Lillian ZOBEL, by Herbert Z. Hancox and Helen W. Hancox, her guardians, Plaintiff-Appellant,

v.

Lee FENENDAEL and Gloria Fenendael, his wife, Defendants-Respondents. †

Court of Appeals

*No. 84–1539. Oral argument July 23, 1985.—Decided November 20, 1985.*
(Also reported in 379 N.W.2d 887.)

---

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the plaintiff-appellant, briefs were filed by *David
J. Colwin* and *Raymond R. Colwin* of *Colwin, Fortune,*

*Colwin, Pomeroy & English, S.C.* Oral argument by *David J. Colwin.*

For the defendants-respondents, a brief was filed by *Kenan J. Kersten* of *Kersten & McKinnon* of Milwaukee and *Louis R. Ullenberg* of Milwaukee. Oral argument by *Kenan J. Kersten.*

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J. Herbert and Helen Hancox, guardians of Lillian Zobel, appeal from a judgment entered, following a jury trial, dismissing their complaint which sought to void a gift by deed executed by Zobel to Lee and Gloria Fenendael. The jury determined that Zobel was competent at the time she made the gift.

During trial, the Hancoxes sought to amend their complaint to conform to certain evidence which showed that Zobel executed the deed while she was subject to a conservatorship. The Hancoxes claimed that Zobel's gift was void, as a matter of law, since it was made without the approval of the conservator or conservatorship court. The trial court denied the motion to amend the pleadings. We conclude the denial of the motion was an abuse of discretion since no surprise or prejudice to the Fenendaels is demonstrated. We also conclude, as a matter of law, that a conservatee lacks the capacity to make a gift without the approval of the conservator or the conservatorship court. Therefore, we reverse and remand with instructions to allow amendment to the pleadings and to enter judgment in favor of the Hancoxes.

On December 20, 1979, Lillian Zobel sold her house on a land contract to the Fenendaels. In November 1981, Zobel petitioned the circuit court for the appointment of a conservator of her estate. The conservatorship court appointed the Hancoxes as conservators of Zobel's estate. After the appointment of the Hancoxes, Zobel decided that she wanted to forgive the balance of the land contract and gift her house to Gloria Fenendael. In March

1982, Zobel executed a deed to the Fenendaels in satisfaction of the balance of the land contract. She did not inform the Hancoxes or the conservatorship court of the pending transaction nor seek their approval of the gift.[1]

The amended complaint upon which the jury trial was conducted alleged that Zobel was not competent to make the gift by deed in March 1982.[2] Based upon these allegations, the Hancoxes sought foreclosure of the land contract. During the course of the Hancoxes' case-in-chief, testimony and documentary evidence established that Zobel was subject to the conservatorship at the time she executed the March 1982 deed in satisfaction of the land contract.

At the close of the Hancoxes' case, the trial court judicially noticed the conservatorship and guardianship file regarding Zobel. The Hancoxes moved for leave to amend their pleadings to include "the defense that the gift was not approved either by the conservator or the court."[3]

---

[1] It was only after these events that the Hancoxes were appointed Zobel's guardians.

[2] The amended complaint also challenged Zobel's competency to make a September 1981 amendment to the original land contract. This amendment predated the conservatorship. The jury found Zobel to be competent at the time she signed this amendment. This finding is not challenged upon this appeal.

The amended complaint also raised a claim of undue influence. This, however, was withdrawn at the close of the Hancoxes' case.

The parties agree that the jury issue of Zobel's competency goes to the question of her mental state and does not address the question of her "capacity" to make a gift while subject to a conservatorship.

[3] Technically, this was not a motion to amend to conform to the evidence under sec. 802.09(2), Stats., since the Hancoxes based their motion upon sec. 802.09(1) and (4). However, no prejudice is demonstrated by this failure to refer to the correct subsection since the Hancoxes' attorney indicated that his motion was to amend the pleadings to include the evidentiary references to the conservatorship. In addi-

Based upon this amendment, the Hancoxes then requested judgment as a matter of law contending that Zobel, as a conservatee, lacked the capacity to make a gift. The trial court took the motions under advisement and stated that it would proceed to take a verdict.

At the close of the evidence, the Hancoxes again moved to amend their amended complaint to conform to the evidence and for judgment. The trial court again deferred ruling on the motions until a verdict was obtained. By decision on motions after verdict, the trial court denied the motion to amend the pleadings. The trial court's decision also, however, determined that the approval of the conservator or the conservatorship court was not required to render Zobel's gift effective.[4]

The Fenendaels rely upon sec. 802.06(2) and (4), Stats., which provides, in part:

> (2) HOW PRESENTED. *Every defense, in law or fact,* except the defense of improper venue, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or 3rd party claim *shall* be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by *motion.. . .*

> (4) PRELIMINARY HEARINGS. The *defenses* specifically listed in sub. (2), whether made in a pleading

tion, the reference to a "defense" was technically inaccurate since the Hancoxes' pleading was a complaint.

[4] This ruling was made in response to the Hancoxes' motion for judgment notwithstanding the verdict. Thus, the trial court, despite denying the motion to amend the pleadings, nevertheless reached the legal issue of whether a conservatee could make an effective gift under these circumstances. However, upon appeal, neither party argues that the trial court's judgment notwithstanding the verdict ruling moots the issue concerning the amendment of the pleadings. Nor does either party address the interaction between the two procedural statutes. We choose therefore to address this case on the issue raised and briefed by the parties—the propriety of the trial court's denial of the motion to amend the pleadings.

> or by motion . . . *shall be heard and determined before trial* on motion of any party, unless the judge to whom the case has been assigned orders that the hearing and determination thereof be deferred until the trial. [Emphasis added.]

This statute, however, does not apply to complaints. It is limited, on its face, to defenses asserted in a responsive pleading. Therefore, the Fenendaels' reliance on this statute and the related line of cases they cite is misplaced.[5]

Rather, the governing statute is sec. 802.09(2), Stats. The most complete discussion and analysis of this statute is contained in *State v. Peterson,* 104 Wis.2d 616, 312 N.W.2d 784 (1981). *Peterson* bifurcates the statute into two parts governing two different fact situations. The first addresses a situation where the issues are tried by the express or implied consent of the parties:

> AMENDMENTS TO CONFORM TO THE EVIDENCE. If issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. . . .

Sec. 802.09(2). This part of the statute appears to be mandatory; if the trial court concludes that the parties consented to the trial of the issues, the court must conform

---

[5] *Gustavson v. O'Brien,* 87 Wis.2d 193, 274 N.W.2d 627 (1979); *Figgs v. City of Milwaukee,* 121 Wis.2d 44, 357 N.W.2d 548 (1984); *Fond du Lac Skyport, Inc. v. Moraine Airways, Inc.,* 67 Wis.2d 109, 226 N.W.2d 428 (1975); *Poehling v. La Crosse Plumbing Supply Co.,* 24 Wis.2d 239, 128 N.W.2d 419 (1964); *Metropolitan Sewerage District v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 69 Wis.2d 387, 230 N.W.2d 651 (1975).

the pleadings to the proof. *Peterson* at 629, 312 N.W.2d at 790.

The second part of the statute addresses a situation where an objection is made at trial that the evidence offered is not within the issues raised by the pleadings. *Id.*

> If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice such party in maintaining the action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Sec. 802.09(2), Stats. When objection is made, the statute grants the court discretion to allow the amendment and encourages the court "to do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his . . . defense upon the merits." *Peterson* at 629–30, 312 N.W.2d at 790–91, quoting Fed. R. Civ. P. 15(b).

Our reading of the entire record in this case reveals that the existence of the conservatorship was alluded to scores of times without objection. Documentary evidence establishing the existence of the conservatorship was stipulated into evidence. At various stages in the proceedings, the Fenendaels themselves put in evidence concerning the conservatorship. The record reveals, by our count, seventeen references to the conservatorship by either the Hancoxes or the Fenendaels before the Fenendaels objected on the relevancy and pleading grounds asserted on this appeal. Under these circumstances, we conclude that the Fenendaels did not timely object to the proofs submitted. Therefore, we analyze the issue on the motion to

amend the pleadings as one governed by the first portion of sec. 802.09(2), Stats. This requires us to determine whether the issues relating to the conservatorship were tried by the express or implied consent of the parties.

Here, there was no express consent.[6] Thus, if the Fenendaels consented to trial of the conservatorship issues, the consent must be implied.

Whether an issue has been tried by implied consent is to be determined by the circuit court; the circuit court must make findings on the issue of consent, because once consent is found, the circuit court has no choice but to amend the pleadings. *Peterson* at 631, 312 N.W.2d at 791. Here, the circuit court did not make any finding that there was—or was not—implied consent. We are thus faced with the issue of whether we can on the basis of the record before us determine whether, as a matter of law, the Fenendaels understood, were aware of, or had actual notice that the issue of Zobel's legal capacity as a conservatee was being raised by the evidence concerning the conservatorship. *See id.*

Implied consent is generally held to exist where there is no objection to the introduction of evidence on the unpleaded issue and where the party not objecting is aware that the evidence goes to the unpleaded issue; actual notice to the parties appears to be the key factor in determining whether there was implied consent. *Id.* at 630, 312 N.W.2d at 791. As noted above, the evidence concerning the conservatorship was admitted without timely objection. The more difficult question is whether the Fenend-

---

[6] Express consent may be given by stipulation, or may be incorporated in a pretrial order and rarely raises any serious fact question. *State v. Peterson,* 104 Wis.2d 616, 630 n.17, 312 N.W.2d 784, 791 (1981). *See also* 6 C. Wright and A. Miller, *Federal Practice and Procedure* § 1493 at 461–62 (1971).

aels were aware that the conservatorship evidence went to the issue of Zobel's capacity to make a gift—an unpleaded issue. In order to find implied consent, it must appear that the parties understood the evidence was aimed at the unpleaded issue. *Id.* Because the evidence on the conservatorship issues was also relevant to the issue of Zobel's competency, the Fenendaels may not have been aware that the Hancoxes were raising a new unpleaded issue. Thus, we cannot conclude, as a matter of law, that the Fenendaels had actual notice that the evidence concerning the conservatorship went to the unpleaded issue. Therefore, the Fenendaels did not impliedly consent to the trial of such isue.

Our analysis does not stop at this point, however. This is because *Peterson* engrafts upon sec. 802.09(2), Stats., an "interests of justice" determination even after a finding that no implied consent to the trial of the unpleaded issue existed.

> If the evidence has been introduced without objection and the circuit court finds that there has been no actual notice, it should find that there has been no implied consent to trial of the unpleaded issue. Under such circumstances, the circuit court may *sua sponte* under sec. 802.09(1), (2) amend the pleadings to conform to the evidence if the circuit court concludes that justice so requires. *Amendment is thus within the discretion of the circuit court and the circuit court in exercising its discretion must balance the interests of the party benefiting by the amendment and those of the party objecting to the amendment.*

*Id.* at 634, 312 N.W.2d at 793 (emphasis added). This "interests of justice" consideration is, essentially, a determination of prejudice. *See id.* at 635, 312 N.W.2d at 793.[7]

---

[7] *Peterson* applied the prejudice determination in a situation where the court had acted *sua sponte* to amend the complaint to conform to the evidence. *Id.* at 634, 312 N.W.2d at 793. We see no reason

Although the supreme court in *Peterson* did not expressly state that the determination of prejudice in this context presents a question of law, we conclude that it does. We do so not only because the supreme court in *Peterson* proceeded to address the question, but also because prejudice, in other contexts, has been held to present a mixed question of law and fact. *See State v. Pitsch,* 124 Wis.2d 628, 633–34, 369 N.W.2d 711, 714–15 (1985).

Here, the historical facts relating to the question of prejudice are undisputed. Thus, we are left with only the legal question as to whether prejudice exists. This court is not bound by a trial court finding based on undisputed evidentiary facts when the finding is essentially a conclusion of law. *Oshkosh Northwestern Co. v. Oshkosh Library Board,* 125 Wis.2d 480, 485, 373 N.W.2d 459, 462 (Ct. App. 1985).

The trial court concluded that permitting the amendment to the complaint would prejudice the Fenendaels. However, the trial court did not specify in what respects such prejudice existed.[8] Upon appeal, the Fenendaels opine that the granting of the motion would have

---

to fashion a different rule in a case such as this where a party has moved to amend a complaint to conform to the evidence. Were we to limit *Peterson* to only those cases where the court has acted *sua sponte,* a party who does not move to amend a complaint would receive the benefit of a prejudice determination, whereas a party who placed the issue before the court would be denied this determination. This would result in an uneven and unreasonable application of the statute. Such an application is to be avoided. *See State Central Credit Union v. Bigus,* 101 Wis.2d 237, 242, 304 N.W.2d 148, 150–51 (Ct. App. 1981). Moreover, when the supreme court fashioned the balancing test in *Peterson,* it was interpreting sec. 802.09(2), Stats., which contemplates a motion made by a party—not the court.

[8] The trial court's finding of "prejudice" to the Fenendaels is actually more akin to a finding of laches against the Hancoxes. While a consideration of laches is certainly appropriate in this "balancing of interest proceeding," laches does not necessarily equate with prejudice.

prompted a need to present evidence establishing the "selfish motivation of the Hancoxes and Lillian Zobel's personal motives in going ahead with the transaction before telling the Hancoxes." But such testimony would have no bearing on the legal question of the capacity of a conservatee to make a gift without conservator or conservatorship court approval. The same holds true for the Fenendaels' claim that "the testimony of the judge in the conservatorship proceedings might have been presented."[9]

The amendment to the pleadings would simply have placed before the trial court the underlying legal question presented on this appeal as to whether a conservatee may make a gift of her property without approval of the conservator or her conservatorship court. No prejudice is shown (and we can fathom none) by the granting of the amendment. The existence of the conservatorship was acknowledged by all parties. Its presence raised a legitimate legal question which the trial court addressed in its ruling on the motion for judgment notwithstanding the verdict. When the facts pertaining to the conservatorship were repeatedly addressed at trial without timely objection, we are at a loss to perceive any prejudice by granting a motion to amend the pleadings to conform to such evidence.[10]

---

[9] This gratuitously assumes that such testimony is admissible.

[10] The cases relied upon by the Fenendaels are inapposite. *Figgs v. City of Milwaukee,* 121 Wis.2d 44, 357 N.W.2d 548 (1984), and its language relating to certain "tactics" on the part of the city attorney smack more of estoppel than prejudice. Moreover, the language is dicta to the rule of the case which holds that the notice of claim given by the plaintiff was sufficient. It was upon this latter issue that the supreme court reversed the court of appeals—not any finding or conclusion relating to the conduct of the city attorney.

*Fond du Lac Skyport, Inc. v. Moraine Airways, Inc.,* 67 Wis.2d 109, 226 N.W.2d 428 (1975), also does not apply since the issue raised by the defendant upon appeal was not raised in his responsive pleadings.

Statutes governing amendment of pleadings are to be liberally construed to permit the presentation of the entire controversy providing such amendment does not unfairly deprive the opposing party of an opportunity to meet the new issue. *Gustavson v. O'Brien,* 87 Wis.2d 193, 204, 274 N.W.2d 627, 633 (1979); *Wipfli v. Martin,* 34 Wis.2d 169, 174, 148 N.W.2d 674, 677 (1967). Here, we do not see the requested amendment to the pleadings as unfairly depriving the Fenendaels of the opportunity to meet the relevant factual and legal issues presented by Zobel's status as a conservatee. Indeed, the trial court decision points to no such specific prejudice. Under these circumstances, the interests of justice required the granting of the amendment to the pleadings, despite the lack of actual notice to the Fenendaels. *Peterson* at 634, 312 N.W.2d at 793.

---

*Poehling v. La Crosse Plumbing Supply Co.,* 24 Wis.2d 239, 128 N.W.2d 419 (1964), was a summary judgment case in which the trial court rejected a proposed amended answer. Thus, *Poehling* is only a pleading case and was decided only on the pleadings in which the defendant claimed a right to try its defenses *seriatim;* first by demurrer, then by a plea in abatement, and finally by an answer on the merits. *Poehling* is not an amendment of pleadings to conform to the evidence case.

The same is true for *Trispel v. Haefer,* 89 Wis.2d 725, 279 N.W.2d 242 (1979), where the issue was whether a party should be permitted to amend its pleading for a third time after a failure to comply with a pretrial order, despite a specific warning of a potential dismissal motion prompted by the party's questionable allegations in its original and amended complaints.

*Metropolitan Sewerage District v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co.,* 69 Wis.2d 387, 230 N.W.2d 651 (1975), and *Drehmel v. Radandt,* 75 Wis.2d 223, 249 N.W.2d 274 (1977), are cases where the trial court found specific prejudice to the party against whom the motion was made and where wholly unrelated and new issues were injected into a proceeding. *Metropolitan Sewerage District* also dealt with a responsive pleading.

We now turn to the legal issue presented by the amendment to the complaint: Whether a conservatee requires the approval of either the conservator or the conservatorship court in order to make an effective gift of her property.[11] We conclude she does.

Section 880.31(1), Stats., provides for the appointment of a conservator of a person's estate when that person "believes that he or she is unable properly to manage his or her property or income." The purpose of the conservatorship statute is "to eliminate the stigma of incompetency for persons who are forgetful because of age, and yet afford them the protection of the court if they desired it." *Estate of Evans,* 28 Wis.2d 97, 100, 135 N.W.2d 832, 834 (1965), quoting Kroncke, *A Decade of Probate Law,* 1961 Wis. L. Rev. 82, 118. The process is voluntary, and the personal appointment of a conservator is not evidence of the competency or incompetency of the person whose estate is under the conservatorship. Sec. 880.31(6). A conservator has all of the powers and duties of a guardian of the property of an incompetent person. Sec. 880.31(3). Section 880.31, however, does not address the power or capacity of a conservatee to dispose of his or her property.

*Evans* determined that a conservator had the authority to create a joint tenancy in certain of the conservatorship property when the transfer was sought by the conservatee and when approved by the conservatorship court. The Hancoxes argue that certain supreme court language in *Evans* always requires approval of the conservator or the conservatorship court before a conservatee can effectively act. "[I]n a conservatorship, where there is no adjudication that the applicant is incompetent, *it makes sense to allow the conservatee the freedom to direct a gift of his property where both the conservator and the court, as here,*

---

[11] We certified this issue to the Wisconsin Supreme Court on August 14, 1985. Certification was denied on October 8, 1985.

*entered no objection." Evans* at 101, 135 N.W.2d at 834 (emphasis added). However, the facts in *Evans* are quite different from those here. In *Evans,* the conservator was directed to transfer the conservatee's property pursuant to the conservatee's petition and the conservatorship court's order. Here, the conservatee did not seek the prior approval of either the conservator or the conservatorship court. In fact, she expressly sought to circumvent both. In our certification to the Wisconsin Supreme Court we asked whether the intent of the *Evans* language was to require conservator or conservatorship court approval in all instances.

Although the appointment of a conservator is not evidence of the incompetency of the conservatee, and although a conservatee is not considered completely incapable of looking after his or her own property (*id.* at 100, 135 N.W.2d at 834), the purpose of a conservatorship is to afford the protections akin to those provided by a guardianship but without the stigma of incompetency. *See id.* If a conservatee does not require the input and approval of the conservator or the conservatorship court in matters relating to the disposition of his or her property, a conservatorship serves no meaningful purpose.

If a conservatee wishes to rid himself or herself of the restrictions of a conservatorship, the statute supplies an avenue for relief.

> **880.31** (4) Any person whose estate is under conservatorship may apply to the court at any time for termination thereof. Upon such application, the court shall fix a time and place for hearing and direct that 10 days' notice by mail be given to the person's guardian, if any, the conservator and the presumptive heirs of the applicant. Upon such hearing, the court shall, unless it is clearly shown that the applicant is incompetent, remove the conservator and order the property restored to the applicant, or if the applicant so desires and the

nominee is suitable, the court may appoint a successor conservator.

■ We acknowledge that invalidating Zobel's gift is a harsh result under the facts of this case where she has been found to be competent at the time of the gift. However, for us to hold that a conservatee may act at his or her whim without conservator or conservatorship court approval would emasculate the statute and render it meaningless. Such interpretations are to be avoided. *See Johnson v. State,* 76 Wis.2d 672, 676, 251 N.W.2d 834, 836 (1977).[12]

We therefore reverse and remand this matter to the trial court with directions to grant the Hancoxes' motion to amend the complaint to conform to the evidence and to enter judgment upon the second amended complaint in favor of the Hancoxes.

*By the Court.*—Judgment reversed and cause remanded.[13]

---

[12] The Fenendaels note that under a limited guardianship, a ward may be allowed to hold or convey property and to enter into contracts. *See* sec. 880.33(3), Stats. They argue that it would be anomalous for the law to accord some respect for the unsupervised legal actions of an incompetent, but give none to a conservatee who is presumed competent. We acknowledge the anomaly but point out that this is an inconsistency more properly corrected by legislative, rather than judicial, action.

[13] We are aware that *Peterson,* having concluded that no prejudice inured to the defendant by virtue of the trial court amendment to the complaint, nonetheless remanded the case "to offer the parties an opportunity to submit additional evidence to ensure that the parties have a full opportunity to be heard on the issues litigated." *Id.* at 640, 312 N.W.2d at 795. Here, however, the Fenendaels have proffered to us the suggested evidence which they claim would have been offered in response to the unpleaded issue. We have previously determined herein that such evidence is not relevant to the legal question presented by the requested amendment. In addition, we have attempted to discern other possible evidentiary material not suggested by the Fenendaels

that could conceivably be relevant to this issue. We have discerned
none.

Finally, this case was tried to a jury whereas *Peterson* was a trial to
the court. Remand here for further evidentiary proceedings is impossi-
ble since the jury has been discharged.

† Petition to review pending. This petition was not decided at the
time the volume went to press. Its disposition will be reported in a later
volume.