Brenda FINLEY and Leo Finley, Jill Finley, Amber Finley and Erika Finley, minors, by their Guardian ad Litem, Randell E. Reinhardt, Plaintiffs-Appellants,

COMPCARE HEALTH SERVICES INSURANCE CORPORATION, a domestic corporation, Involuntary-Plaintiff,

v.

David E. CULLIGAN, M.D., James W. Nohl, M.D., Physicians Insurance Company of Wisconsin, a domestic corporation, and Wisconsin Patients Compensation Fund, a statutory entity, Defendants-Respondents.

Court of Appeals

*No. 94–2977. Oral argument October 12, 1995.—Decided April 10, 1996.*

(Also reported in 548 N.W.2d 854.)

On behalf of the plaintiffs-appellants, there were briefs and oral argument by *Randall E. Reinhardt, Esq.* of *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.* of Milwaukee.

On behalf of the defendants-respondents, James W. Nohl, M.D., and Physicians Insurance Company of Wisconsin, there was a brief and oral argument by *Donald H. Carlson*, of *Crivello, Carlson, Mentkowski & Steeves, S.C.*, of Milwaukee.

On behalf of the defendants-respondents, David E. Culligan, M.D., and Physicians Insurance Company of Wisconsin,a brief was submitted by *Nancy M. Kennedy* and *Mark A. Dotson* of *Quarles & Brady* of Milwaukee. There was oral argument by *Nancy M. Kennedy*.

---

On behalf of the defendants-respondents, Patients Compensation Fund, a brief was submitted by *Paul J. Kelly* of *Schellinger & Doyle, S.C.* of Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

NETTESHEIM, J. Brenda Finley appeals from a trial court judgment dismissing her complaint upon a jury finding that Finley's two treating physicians were not negligent in their care and treatment of her prior to a third doctor's discovery of cancer in her right breast.[1] Finley contends that the trial court erred by: (1) delivering certain portions of the pattern medical malpractice jury instructions;[2] (2) rejecting Finley's proposed amendment to the pleadings, motion for directed verdict and, alternatively, jury instructions regarding informed consent; and (3) denying her motion for a new trial on sufficiency of evidence grounds. We conclude that the trial court did not err in these rulings. Therefore, we affirm the judgment.

## BACKGROUND

We recite the facts as they developed at trial. Finley first noticed a lump in her right breast in March 1991, when she was twenty-eight years old and seven months pregnant with her third child, Erika. On March 12, during a previously scheduled routine obstetrical visit, Dr. James Nohl examined Finley and confirmed the presence of a nodule that measured

[1] Also appealing are Finley's husband and her three children.

[2] All references are to WIS J I—CIVIL 1023 as it existed at the time of trial and before its revision in 1995. However, the instruction in its present form is substantially the same as the predecessor instruction.

approximately one centimeter in her right breast. Nohl ordered an ultrasound which was performed on March 19. Nohl also referred Finley to Dr. David Culligan, a surgeon.

Culligan agreed to examine Finley after informing her and the referring obstetrics department that he would not be available for follow-up care because he was scheduled to begin a new position in Minnesota and his last patient appointment date was in the following month. Finley's appointment with Culligan was scheduled for March 21.

Culligan's March 21 examination revealed two "freely movable" masses in Finley's right breast. At that time, Culligan and the radiologist who performed the ultrasound on March 19 opined that the masses were compatible with fibroadenomas rather than cancer. Based on the ultrasound results, Culligan believed that the lumps were benign and did not perform a biopsy. Culligan did not then discuss with Finley the option of having a biopsy done immediately or discuss any of the attendant benefits or risks of either having or forgoing a biopsy at that time. However, it is undisputed that Culligan informed Finley that the lumps had to be removed.

There was conflicting trial testimony regarding whether Culligan advised Finley to have the lumps removed after her pregnancy or if he advised her that she could wait until she finished nursing. Finley stated that she informed Culligan that she planned to breast feed "as long as [she] possibly could." Finley asserted that Culligan told her that the lumps "would not cause [her] any harm," but that they should come out when she finished nursing. Finley testified that Culligan explained to her that incisions made before she finished nursing would leak milk and have difficulty

healing. She maintained that Culligan never cautioned her not to breast feed, only that he would not perform surgery until her breasts were quiescent.

Culligan, however, contended that he told Finley to have the lumps removed after her pregnancy and that she should not nurse at all. He testified that he informed Finley that if she nursed after the lumps were removed, a "milk fistula" would result, which he described as "a terrible complication of nursing that doesn't heal." Culligan said that he explained to Finley that this would result if she nursed after having surgery because her breast would leak milk through the two incisions required to remove the lumps. After this March 21 visit, Finley had no further appointments, contact or communication with Culligan.

Finley gave birth on April 26. At a six-week obstetrics appointment on June 5, Nohl examined Finley's breast again and performed a needle biopsy. Nohl later testified that the "gritty feel" of the tissue removed that day concerned him that cancer might be present. However, the June 12 pathology report indicated that there were no malignant cells.

Finley called Nohl's office a week after the needle biopsy was performed to get the results of the pathology report. Finley testified that a nurse returned her call and reported that the biopsy was negative and that Finley should contact Nohl's office for a referral to a surgeon to have the lumps removed when she finished nursing. Finley did not speak directly to Nohl at this time.

Finley continued to nurse for two to three weeks after the June 5 appointment with Nohl. At the end of June, Finley called for a referral to a surgeon to have the lumps removed.

Nohl signed a referral form for Finley on June 28 to a "Dr. Kole," a surgeon who was expected to begin his practice in the middle of July. Finley was scheduled to see Kole on August 2. At trial, the parties disputed whether Nohl could have referred Finley to one of three surgeons in affiliated offices for an appointment sooner than Kole's arrival.

On August 2, Kole performed a breast examination and mammography and scheduled a complete biopsy, which he performed on August 9. Tragically, the biopsy results revealed that Finley had cancer. A preoperative x-ray performed at the end of August indicated that the cancer had spread to Finley's lungs. Subsequently, Finley's treatment has included chemotherapy, a bone marrow transplant, partial removal of her lung and a mastectomy.

In March 1993, Finley filed a complaint alleging that Nohl was negligent in diagnosing her and that Culligan was negligent in his care, treatment and diagnosis. A six-day jury trial was held from May 9-16, 1994. On May 13, the final day of taking testimony, Finley moved to amend her complaint to include an informed consent cause of action. The trial court denied this request.

At the conclusion of the trial, the court submitted the standard medical malpractice jury instruction WIS J I—CIVIL 1023, rejecting Finley's proposed modified instruction.[3] The court included in the instruction the

[3] Finley proposed the following instruction of the definition of negligence:

> A doctor is negligent when, as a physician, he fails to exercise reasonable and ordinary care. Reasonable and ordinary care is the degree of care which physicians ordinarily exercise under the same or similar circumstances. A physician fails to exercise reasonable and ordinary care when, without intending to do any wrong, he

optional language regarding alternative methods of treatment.

The jury returned a verdict finding that neither Nohl nor Culligan had been negligent in his care and treatment of Finley. The trial court denied Finley's motion to set aside the verdict and order a new trial, and instead entered judgment on the jury's verdict. Finley appeals.

## DISCUSSION

### *Medical Malpractice Jury Instruction*

Finley first contends that the trial court erred by reading the first paragraph of WIS J I—CIVIL 1023, the standard medical malpractice jury instruction. Finley maintains that the reading was error because it restated the plaintiff's burden of proof which had already been read to the jury via the pattern jury instruction regarding burden of proof. We reject this argument.

The trial court has broad discretion when instructing the jury. *Fischer v. Ganju,* 168 Wis. 2d 834, 849, 485 N.W.2d 10, 16 (1992). No grounds for reversal exist if the overall meaning communicated by the instructions was a correct statement of the law. *Id.* at 850, 485 N.W.2d at 16. Rather, an allegedly erroneous instruction to the jury warrants reversal and a new trial only if the error was prejudicial. *Id.* at 849-50, 485 N.W.2d at 16. A prejudicial error is one which probably,

does an act or fails to take a precaution under circumstances in which a physician ought reasonably to foresee that such act or omission will subject the person of another to an unreasonable risk of injury or damage.

not merely possibly, misled the jury. *Id.* at 850, 485 N.W.2d at 16.

In this case, although the jury may have already been instructed on the burden of proof, the court did not misstate the law when it repeated the burden of proof within the context of the medical malpractice instruction. Further, Finley has failed to demonstrate any prejudice even if it were error. *See id.* We are not prepared to say that simply because an instruction repeats a burden of proof, it constitutes prejudicial reversible error.

Finley next claims that WIS J I—CIVIL 1023 "on its face is unfairly slanted in favor of physicians" because it repeatedly refers to what is not negligence in describing a physician's standard of care. The Wisconsin Supreme Court recently rejected that argument in *Nowatske v. Osterloh,* 198 Wis. 2d 419, 444-45, 543 N.W.2d 265, 274-75 (1996), emphasizing that jury instructions should not be fractured into segments and taken out of context to support an argument. The court concluded that when the instruction is read in context and taken as a whole, any alleged bias in favor of physicians dissipates. *Id.* at 445, 543 N.W.2d at 275. Although the supreme court said that WIS J I—CIVIL 1023 might be clarified and improved by revision in the future, it was not erroneous for the trial court to give the instruction.[4] *See Nowatske*, 198 Wis. 2d at 449, 543 N.W.2d at 276.

Next, Finley contends that the trial court erred by giving the alternative method of treatment portion of

[4] We placed this case on hold pending the supreme court's decision in *Nowatske v. Osterloh*, 198 Wis. 2d 419, 543 N.W.2d 265 (1996).

WIS J I—CIVIL 1023.[5] She maintains that the issue in this case was whether Nohl and Culligan were negligent for failing to diagnose her cancer, not whether there were alternative methods of treatment available.

The standard medical malpractice jury instruction, WIS J I—CIVIL 1023, does not specifically instruct as to negligent diagnosis. *Miller v. Kim,* 191 Wis. 2d 187, 198, 528 N.W.2d 72, 76 (Ct. App. 1995). However, diagnosis is considered "care and treatment." *Id.* And, diagnosis may be the subject matter of a physician's medical malpractice. *See Knief v. Sargent,* 40 Wis. 2d 4, 8, 161 N.W.2d 232, 234 (1968). While a physician does not guarantee or insure the correctness of the diagnosis made, he or she must use the proper degree of skill and care in making the diagnosis. *Id.*

The alternative method instruction is optional and should be given only when the evidence allows the jury to find that more than one method of diagnosis or treatment of the patient is recognized by the average practitioner. *See Miller,* 191 Wis. 2d at 198, 528 N.W.2d at 76. Thus, in this case, the optional instruction was proper so long as there was medical expert testimony presented at trial that alternative

[5] The trial court gave the following instruction to the jury:

> If you find that more than one method of treatment of Brenda Finley's condition was recognized, then Dr. Culligan and Dr. Nohl were at liberty to select any of the recognized methods. Dr. Culligan and Dr. Nohl were not negligent merely because they made a choice of a recognized alternative method of treatment if they used the required care, skill and judgment in administering the method. This is true even though other medical witnesses may not agree with them on the choice that was made.

methods of diagnosing Finley's breast lump were available to the average practitioner. *See id.*

Finley contends that this case is analogous to *Miller,* where a medical malpractice action was commenced against a physician who failed to diagnose the plaintiff with spinal meningitis. *Id.* at 190, 528 N.W.2d at 73. The *Miller* court held that the trial court erred by delivering the alternative method instruction to the jury because all the medical experts were unanimous in their testimony that when the symptoms of spinal meningitis are present in a young child, a spinal tap is the only diagnostic method available to rule out the illness. *Id.* at 194-98, 528 N.W.2d at 75-76. Finley reasons that, similarly, a biopsy was the only way to determine the nature of the lump or mass in her breast.

This position is not supported by the record. At trial, defense witness Dr. James Dolan, an obstetrician, testified that a physician has various options when diagnosing or treating a breast lump discovered in a woman in her third trimester of pregnancy. Dolan gave the following testimony on direct examination:

> Q When you find that you have a patient that has a lump that is in [her] third trimester, are there certain options that are available to you as her obstetrician?
>
> A To the diagnosis of the breast, being in young people, we commonly will follow that breast and that lump to see if the lump will possibly disappear. In most situations, breast lumps do tend to disappear by themselves. Over a period of time, if the breast lump hasn't disappeared, one may opt to investigate that . . . by a noninvasive

> way–noninvasive ways being mammography or by thermography . . . .
>
> The other options are to do an invasive procedure, either by doing an open biopsy, which means make an incision over the breast and removing that portion of the . . . breast and giving it to the pathologist . . . to put under the microscope and examine, or doing a sampling of the breast, which is called a needle biopsy . . . to obtain a sampling of . . . cells from the lump . . . .

Finley's medical expert witness, Dr. Richard Love, an oncology specialist, also testified that a physician has several options when faced with a patient with a breast lump. He testified on cross-examination:

> Q Okay. You gave me a suggested algorithm that if based upon the history and findings on physical exam, if one had something that was in any way suspicious, the doctor had three choices. The doctor, to stay within the standard of care, could consider biopsy over a relatively short time frame, isn't that correct?
>
> A Correct.
>
> Q And that's just what we were just talking about, correct?
>
> A Right.
>
> Q We could go out to six weeks; you won't quibble over a few weeks, correct?
>
> A Okay.
>
> Q The doctor could arrange for follow-up at sometime in the future, that was another option that a physician could have, didn't you tell me that?
>
> A Yes.

Q And, in fact, you had said maybe four weeks or so for that follow-up appointment, correct?

A Uh-huh.

Q I'm sorry?

A Yes, yes.

Q Thank you. Or he could get further additional information such as ultrasound, which he already had, that's correct?

A Uh-huh. Yes.

Based on this testimony, we conclude that the trial court did not err by reading the alternative method instruction. The testimony revealed that a reasonable physician has several options that are within professional norms when diagnosing and treating a third trimester patient with a breast lump. This evidence reveals alternative invasive and noninvasive procedures that the physician might utilize to determine the nature of a breast lump or mass. That Finley's expert, Love, was critical of the choices made by Culligan and Nohl does not govern the issue. *See* WIS J I—CIVIL 1023. Rather, the question is whether other competing evidence, recognized by the profession, supported the alternative mode of monitoring Finley's condition. Since such evidence was present, the instruction was properly given to the jury. As such, the issue as to whether the physicians properly selected the alternative mode became one of factfinding for the jury.

Thus, this case is not like *Miller* because this is not a case where all of the experts, including the defense experts, testified at some point that performing a biopsy was the only way to definitively diagnose a solid

tumor as being cancerous. Nor does the evidence in this case demonstrate the "index of suspicion" required by *Miller* which would require use of the diagnostic method which would reveal the nature of the disease. *See Miller,* 191 Wis. 2d at 198, 528 N.W.2d at 76. To the contrary, the evidence was in conflict, demonstrating medically alternative modes of treatment for a patient who presented Finley's symptoms and condition. *C.f. id.* at 193, 528 N.W.2d at 74.

Therefore, the trial court did not err when it submitted the alternative method of treatment instruction to the jury. It was then up to the jury to determine whether Culligan and Nohl used the required care, skill and judgment in selecting and administering their chosen methods. *See* WIS J I—CIVIL 1023.

*Amendment of the Pleadings*

Finley next argues that the trial court erred when it denied her motion to amend her complaint to state a claim for informed consent.[6] A trial court's decision to grant leave to amend a complaint is discretionary. *Carl v. Spickler Enters.,* 165 Wis. 2d 611, 622, 478 N.W.2d 48, 52 (Ct. App. 1991). This court will not reverse a discretionary decision unless the trial court misuses that discretion. *Id.* A misuse of trial court discretion has occurred if the record demonstrates that the trial court failed to exercise its discretion, the facts do not support the trial court's decision or the trial court

[6] In conjunction with this request, Finley also asked the trial court to direct a verdict in her favor on this theory or, alternatively, to instruct the jury under this theory.

applied the wrong legal standard. *Id.* at 622-23, 478 N.W.2d at 52-53.

At the close of the proceedings on May 12, 1994, the fourth day of trial, the parties and the trial court conducted some preliminary discussions regarding jury instructions. At this conference, the court indicated that it would deliver the alternative method of treatment provisions set out in WIS J I—CIVIL 1023.

When the trial reconvened the following morning, the final day of testimony, Finley moved to amend her complaint to conform to the evidence to include a cause of action based on informed consent. Finley reasoned that since the court had decided to give the alternative method of treatment instruction as requested by Nohl and Culligan, the court should also allow her the amendment to allege this further theory of recovery. The trial court refused, ruling that the evidence presented to that point did not support an informed consent instruction.

Section 802.09(2), STATS., governing the amendment of pleadings to conform to the evidence, is bifurcated to cover two different factual situations. *Zobel v. Fenendael,* 127 Wis. 2d 382, 387, 379 N.W.2d 887, 890 (Ct. App. 1985), *cert. denied,* 479 U.S. 804 (1986). One situation is where a party objects to the evidence as beyond the scope of the pleadings. *Id.* at 388, 379 N.W.2d at 890. That is not the situation here since the evidence upon which Finley relied to amend her complaint came in without objection.

The other situation occurs when an issue not raised in the pleadings is tried without objection by the express or implied consent of the parties. In such a setting, the trial court should conform the pleadings to the proof. *Id.* at 387-88, 379 N.W.2d at 890; *see*

§ 802.09(2), STATS. That is the situation here. Finley acknowledges that she did not formally plead an informed consent cause of action, but she contends that Nohl and Culligan impliedly consented to the trial of the issue because they did not object to evidence which arguably traveled to that claim and because they defended on the ground of alternative method of treatment.

We have examined this record in detail. We have discovered nothing in the pretrial proceedings or Finley's opening statement which would have *reasonably* alerted Nohl and Culligan that Finley was additionally pursuing an informed consent cause of action. Not until Finley's eleventh-hour requested amendment did this theory of prosecution emerge.

We must bear in mind that the question before the trial court was whether Finley's pleadings could be *fairly* amended at this late stage to add an informed consent cause of action. Finley argues that her request was proper because Nohl and Culligan were defending, in part, on alternative method of treatment grounds. Finley seems to reason that an informed consent cause of action automatically "piggybacks" an alternative method of treatment defense. We disagree that this is always so. A failure to diagnose is one form of medical malpractice. *See* WIS J I—CIVIL 1023; *Knief*, 40 Wis. 2d at 8, 161 N.W.2d at 234. A failure to obtain informed consent is another discrete form of malpractice, requiring a consideration of additional and different factors. *See* WIS J I—CIVIL 1023.2. When ruling on Finley's motion to amend her pleadings, the trial court properly observed that this case perhaps *could* have included an informed consent cause of action.[7]

[7] In fact, § 448.30, STATS., requires that "Any physician who treats a patient shall inform the patient about the availability of

However, the issue before the court was whether this claim could fairly be injected into the case at this late hour.

The answer to this question is not governed simply by the fact that Finley can point to certain evidence, some from Nohl and Culligan themselves, supportive of her informed consent theory. Rather, the proper inquiry is whether Nohl and Culligan were properly apprised that the evidence traveled to the issue which Finley belatedly sought to inject into the trial. *See Zobel*, 127 Wis. 2d at 389-90, 379 N.W.2d at 891 (in order to find implied consent, it must appear that the parties understood that the evidence was aimed at the unpleaded issue).

Our examination of the record does not satisfy us that Nohl and Culligan were reasonably apprised that the evidence presented at the trial traveled to an, as yet, unpleaded cause of action premised upon the law of informed consent. Instead, we conclude that all the parties saw all the evidence as bearing on the issue actually pled and actually tried—Finley's cause of action for failure to properly diagnose.

We also properly consider the interests of justice, which is essentially a determination of prejudice. *See id.* at 390, 379 N.W.2d at 892. Here, the trial court did not make a prejudice analysis because it ruled on a threshold basis that the evidence did not support the amended cause of action. However, we may properly search for reasons to sustain a trial court's discretionary ruling. *State v. Morgan*, 195 Wis. 2d 388, 443, 536 N.W.2d 425, 446 (Ct. App. 1995).

If the trial court had granted Finley's amendment, the court would likely have had to, at a minimum,

all alternate, viable medical modes of treatment and about the benefits and risks of these treatments."

continue the trial to allow Culligan and Nohl to conduct discovery on the informed consent issue. In most cases involving a jury, this is not a practical option. Thus, the other option would have been for the court to declare a mistrial and order a new trial after the additional discovery was completed. However, we need finality in litigation. *State v. Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157, 163 (1994). To that end, we properly hold the parties to the litigation tactics and strategies which they have pursued. This is especially so in an involved, complicated and already lengthy case such as this which was on the brink of jury deliberations when the new issue was introduced.

For these added reasons, we conclude that the trial court did not err by rejecting Finley's requests to amend her complaint.

*Sufficiency of the Evidence*

Finally, we reject Finley's argument that the evidence was insufficient to sustain the jury's findings that Nohl and Culligan were not negligent. To support this argument, Finley points to the testimony of two of her expert witnesses who were board certified in internal medicine and oncology and various treatises which supported her claims. Finley maintains that, in contrast, Culligan testified on his own behalf that he conformed to a physician's standard of care, and Nohl called only one expert witness to support his defense.

A jury verdict will be sustained if there is any credible evidence to support the verdict, sufficient to remove the question from the realm of conjecture. *See Nieuwendorp v. American Family Ins. Co.,* 191 Wis. 2d 462, 472, 529 N.W.2d 594, 598 (1995). This is even

more true where, as here, the verdict has the trial court's approval. *Radford v. J.J.B. Enters.,* 163 Wis. 2d 534, 543, 472 N.W.2d 790, 794 (Ct. App. 1991). Before a reviewing court will reverse, there must be "such a complete failure of proof that the verdict must have been based on speculation." *Nieuwendorp,* 191 Wis. 2d at 472, 529 N.W.2d at 598. Our consideration of the evidence must be done in the light most favorable to the verdict, and when more than one inference may be drawn from the evidence, we are bound to accept the inference drawn by the jury. *See id.*

Based on our review of the record, much of it covered in the discussion just completed, we conclude that the jury could have reasonably concluded that neither Culligan nor Nohl was negligent in his diagnosis and treatment of Finley. Finley's argument regarding the number of witnesses does not govern the issue. And, the credibility of the witnesses and the weight to be afforded their individual testimony are left to the jury. *Radford,* 163 Wis. 2d at 543, 472 N.W.2d at 794.

This court's duty is to search for credible evidence to sustain the jury's verdict, not to search the record on appeal for evidence to sustain a verdict that the jury could have reached, but did not. *Id.* The testimony established that Nohl examined Finley on March 12 and immediately referred her to Culligan, a specialist who performed an ultrasound, which Finley's expert acknowledged on cross-examination was one alternative available to a physician. Culligan also informed Finley at that time that the lumps had to be removed. On June 5, after Finley's pregnancy, Nohl performed a needle biopsy, another recognized method of treatment or diagnosis. The pathology report from

this procedure reported no malignant cells. Nonetheless, Nohl referred Finley to a surgeon to have the lumps removed.

Although these chosen methods unfortunately did not accurately diagnose Finley's condition in this case, there was credible evidence that the medical profession regards these procedures as recognized available choices. If we were the trier of fact, we might well come to an opposite conclusion, but our role is not to retry this case. It was the jury's call whether Culligan and Nohl used the required care, skill and judgment in administering their chosen methods. *See* WIS J I—CIVIL 1023. Based on the entire record, we conclude that there is credible evidence to support the jury's verdict. *See Nieuwendorp,* 191 Wis. 2d at 472, 529 N.W.2d at 598.

*By the Court.*—Judgment affirmed.